# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

MAURICE CARR,

        Plaintiff,

v.                                                                Case No. 09-CV-629

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## ORDER

Plaintiff Maurice Carr ("Carr") filed this action for judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits and Supplemental Security Income. Carr alleges disability arising from his paranoid schizoaffective disorder. For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence and will affirm the agency determination.

## BACKGROUND

**I.  Procedural Background**

Carr filed his applications for benefits on January 17, 2007, and alleged a disability onset date of January 1, 2006. However, Carr is only insured for disability benefits through December 2007. (Tr. 19, 102-05, 109-12). The Commissioner denied Carr's initial application and also denied it upon reconsideration. (Tr. 39-42, 43-46). Carr requested a hearing and appeared before Administrative Law Judge

(ALJ) Margaret O'Grady on March 3, 2009. (Tr. 16). The ALJ denied Carr's application in a decision issued on March 16, 2009. (Tr. 9-15). Carr requested review of the decision and the Appeals Council denied his request on May 7, 2009. (Tr. 1-3). Carr then filed suit in this court on June 26, 2009.

## II.     Factual Background and Hearing Testimony

Carr was 42 years old at the time of his hearing before ALJ O'Grady. Carr testified that he completed a General Equivalency Degree and two years of college but never earned a degree or certification. He was last employed more than thirteen years prior to his hearing as a manager at McDonald's. Carr reported that he stopped working because the medications he was taking made him drowsy and impeded his concentration. (Tr. 20-21).

Carr also testified regarding his mental and physical conditions. He reported taking the prescription medications Haldol, Zoloft, Seroquel, and Cogentin on a daily basis for his mental illness. Carr also testified that he has an inhaler for asthma, but that he uses it less than once per week and does not carry it on his person. (Tr. 22). Carr suffers some shakiness and drowsiness as a result of his medications and the drugs prevent him from concentrating fully. (Tr. 23, 26). Carr also noted that he has been diagnosed as a schizophrenic and that he experiences hallucinations, hostility, difficulty thinking and concentrating, and that he has attempted suicide in the past. However, Carr testified that his hallucinations and hostility are controlled when he is on medication. (Tr. 27-28).

Carr provided further testimony regarding his activities. He reported that on a typical day he goes for a walk, visits with friends, and may go to the movies. Carr attends to his own personal hygiene and needs and does housework, such as cooking, laundry, dishes, vacuuming, and mopping. Carr reads, watches TV, grocery shops, attends church on a weekly basis, and participates in a bible study two to three times per week. He does not drive and does not have a current driver's license, though he previously possessed an Illinois driver's license. (Tr. 20, 23-24). Carr has been in prison several times and was last imprisoned in August 2007 for criminal damage to property. (Tr. 25-26).

Vocational Expert Jacqueline Wenkman also provided testimony at Carr's hearing before the ALJ. Ms. Wenkman identified Carr's past relevant work as a nursing assistant as medium, semi-skilled work, and his past employment as a fast-food worker as light and unskilled. The ALJ then presented Ms. Wenkman with a hypothetical claimant with no exertional limitations, who is limited to routine, repetitive, simple non-complex, low-stress work with no public contact, occasional interaction with co-workers and supervisors, and who cannot be exposed to concentrated dust, fumes, or environmental type irritants. Ms. Wenkman testified that an individual with these limitations could not perform Carr's previous work, but that jobs were available in the state that such a person could perform. Specifically, an individual with the cited limitations could do unskilled manufacturing assembly work, of which 24,000 jobs exist at the medium level, 27,000 jobs at the light level,

and 5,999 jobs at the sedentary level. Additionally, the individual could perform packaging work in manufacturing, of which 4,800 jobs exist at the medium level, and 7,453 jobs at the light level. The hypothetical individual could perform unskilled sorting activities in manufacturing, of which 3,600 jobs exist at the medium level and 2,660 jobs at the light level. Finally, the individual could perform housekeeping and janitorial work, of which 21,000 jobs exist at the medium level and 7,620 jobs exist at the light level. (Tr. 29-30).

In response to a question from Jefferson's attorney, Ms. Wenkman testified that an individual who can only work at a consistent pace, has to avoid all interaction with co-workers and the public, and who would be absent from work three or more days per month cannot perform competitive work. However, she clarified that these limitations do not impact her previous determination of work that the hypothetical individual can perform because the jobs she cited do not involve interaction with the public or others on the work-site. Ms. Wenkman also confirmed that the hypothetical individual could still perform the identified jobs if he was off task at times. (Tr. 32).

## III. Medical Evidence of Record

Carr's relevant medical record begins with a visit to Dr. Gregory Rudolph, Ph.D., on March 7, 2007. Carr was referred to Dr. Rudolph for a mental status evaluation by the Disability Determination Board for the State of Wisconsin. At the time of his evaluation, Carr was about to be released from state prison and was claiming disability based on schizophrenia. Dr. Rudolph noted Carr's history of

substance abuse involving alcohol and cocaine and his three previous periods of incarceration. Dr. Rudolph stated that Carr has a history of paranoid schizophrenia with auditory and visual hallucinations, but commented that the hallucinations appeared to be under control with medication. Dr. Rudolph concluded that Carr had good orientation to reality, that his memory recall was appropriate, that he had good knowledge of general information, and that he showed adequate judgment and ability to use basic reasoning skills. Dr. Rudolph diagnosed Carr with schizophrenia, paranoid type - currently in remission, dysthymia, substance dependence for cocaine - in remission, substance dependence for alcohol - in remission, and anti-social personality. (Tr. 327-30).

Dr. Eric Edelman, Ph.D., reviewed Carr's record and completed a Psychiatric Review Technique on March 15, 2007. (Tr. 332-48). Dr. Edelman determined that Carr had moderate restriction on his activities of daily living, and moderate difficulties in maintaining social functioning and concentration, persistence or pace. (Tr. 342). Dr. Edelman also found moderate limitations on Carr's ability to do the following: understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions, get along with co-workers, and respond appropriately to changes in the work setting. (Tr. 346-47). Dr.

Edelman's conclusions were affirmed by Dr. Keith Bauer, Ph.D., on June 28, 2007. (Tr. 383).

Carr was assessed by the Milwaukee County Behavioral Health Division on March 28, 2007, and April 4, 2007. Carr voluntarily reported to the facility because he had been released from prison without his medications. Carr's assessment reports that he presented for refills on his medication and was "currently feeling stable." (Tr. 354, 361). The non-attending evaluator who completed Carr's assessment noted that he was "alert and oriented, cooperative, and pleasant with interviewer." (Tr. 358).

Health Care for the Homeless conducted a Psychiatric Evaluation of Carr on May 2, 2007. The evaluation concluded that Carr appeared "fairly well cognitively intact and has secured and maintained previous employment, surprisingly despite his ongoing psychosis." (Tr. 376). The evaluation prescribed medication management and psychotherapy. Dr. Steven Ortell, M.D., a health care provider with Heath Care for the Homeless, saw Carr on June 4, 2007. Carr sought the appointment because he ran out of medication and had some psychotic symptoms. Dr. Ortell reported that Carr was "quite likable and engaging" and that he had "no overt psychosis." (Tr. 374).

Carr's medical history then skips forward more than a year, to November 3, 2008, when Dr. Tony Thrasher, D.O., completed a Mental Impairment Assessment Form for Carr. The form notes that Dr. Thrasher completed the assessment form

-6-

for Dr. Ortell, who was on vacation. (Tr. 385). On the form, Dr. Thrasher identified the following symptoms for Carr: suicidal ideation/attempt, hostility/irritability, difficulty thinking/concentrating, delusions/hallucinations, and paranoia. Dr. Thrasher also noted that the following work place situations would likely exacerbate Carr's symptoms: tasks performed at a consistent pace, interaction with coworkers, public contact, detailed tasks, noise, and fast paced tasks. Finally, Dr. Thrasher noted that Carr would likely be absent three or more days per month due to his symptoms. (Tr. 384).

Two weeks after Dr. Thrasher completed the form, Carr saw Dr. Ortell because he was running low on medications. Dr. Ortell noted that the medications were "working quite well" and that Carr's "psychoses are under good control." Dr. Ortell also reported that Carr had no overt psychosis and that his symptoms did not recur despite missing medication for two days. (Tr. 386).

## ANALYSIS

The Social Security Act provides that a district court may affirm, modify, or reverse the decision of the Commissioner of Social Security and may also remand the cause for a rehearing. 42 U.S.C. § 405(g). However, the statute also states that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court will uphold the Commissioner's decision if it is supported by substantial evidence and does not contain legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Substantial evidence is evidence that a reasonable person would accept as adequate to support the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The court determines whether the decision is supported by substantial evidence by reviewing the entire record, but the court cannot substitute its judgment for the ALJ's by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Jens*, 347 F.3d at 212. Instead, the court looks to see whether the ALJ articulated an "accurate and logical bridge from the evidence to the conclusion" that the court can follow. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Carr provides only a short and unsupported assertion of error by the ALJ. His brief consists of a single page and his entire argument is contained in the following two sentences:

> **Statement of errors**. According to our records, the above stated defendants disregarded Mr. Carr's doctors assessments of Mr. Carr's disability to secure gainful employment. With the multitude of health impingements, we believe Mr. Maurice Carr 100% disabled and a candidate for disability from the Social Security Administration.

(Pl.'s Br., at 1). Carr provides no citation to any medical evidence of record and does not specify the errors he attributes to the ALJ. Carr's response brief represents a slight improvement because it totals three pages, makes reference to limited medical evidence, and points to one alleged error in the ALJ's determination. In his response, Carr argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly account for Dr. Thrasher's opinions

-8-

appearing within the Mental Impairment Assessment Form he completed. Specifically, Carr notes that Dr. Thrasher answered "yes" to the question: "Has your patient's mental impairment caused more than a minimal limitation of ability to perform basic work activities?" Carr argues that the ALJ's decision does not properly account for Dr. Thrasher's opinion that Carr's schizophrenia impedes his ability to work.

Carr's argument alleges error in the Residual Functional Capacity (RFC) determination reached by the ALJ. An RFC represents the maximum that a claimant is still capable of despite his or her mental and physical limitations. *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). In determining the RFC, an ALJ relies upon the medical evidence and testimony in the record and must determine what weight to give to the opinions of medical treaters and explain his reasons for doing so. *Id.* at 676. The ALJ concluded that Carr has the RFC to perform work at all exertional levels, except that he is limited to unskilled simple work with no public contact and only occasional contact with co-workers and supervisors which does not involve exposure to concentrated fumes, dust or environmental irritants. (Tr. 12). In reaching her RFC, the ALJ cited evidence establishing that Carr's mental illness is well managed by his medications and noted that the record is devoid of significant functional deficits attributable to Carr's asthma. She also states that she assigns "little weight" to Dr. Thrasher's opinion. The ALJ explains that she decided to apply diminished weight because the form in

-9-

which Dr. Thrasher's opinions appear was "filled out by a non-treating doctor" and was "severely at odds with the rest of the medical evidence and is contradicted by treatment notes indicating the claimant was cooperative and asymptomatic and much improved when medication compliant." (Tr. 14). It is the ALJ's assignment of little weight to Dr. Thrasher's conclusions which Carr alleges to be remandable error.

The court disagrees with Carr's conclusion. The ALJ properly considered the medical evidence and provided an adequate explanation for the weight she assigned to Dr. Thrasher's opinions. A treating physician's opinion about a claimant's medical condition is entitled to controlling weight if supported by medical evidence and consistent with evidence in the record. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). However, there is no evidence that Dr. Thrasher is a treating physician. There is nothing in the record to indicate that Dr. Thrasher ever saw or examined Carr and Carr fails to point to any such evidence. To the contrary, Dr. Thrasher's assessment suggests that he was merely filling out the form on behalf of Carr's actual treating physician, Dr. Ortell, because Dr. Ortell was "on vacation." (Tr. 385). Therefore, the ALJ need not apply controlling weight to Dr. Thrasher's conclusions.

Further, an ALJ may discount a physician's opinion, even one issued by a treating physician, if it is inconsistent with the opinion of a consulting physician and the ALJ provides reasons for rejecting the evidence. *Skarbek*, 390 F.3d at 503. Here, the ALJ explained that Dr. Thrasher's opinions contradicted the treatment notes of Dr. Ortell indicating that Carr was asymptomatic when properly medicated.

-10-

Indeed, Dr. Ortell stated that Carr's symptoms were under "good control" a mere two weeks after Dr. Thrasher opined that Carr was significantly impaired by his mental illness. The ALJ appropriately applied diminished weight to the opinion of Dr. Thrasher, a non-treating physician, which directly contradicted conclusions provided by Carr's treating physician. Consequently, the court cannot find error in the ALJ's consideration of the relevant medical evidence or her RFC assessment.

## CONCLUSION

Carr presents only one specific challenge to the ALJ's decision. However, he fails to establish error by the ALJ on this basis because the ALJ appropriately assigned diminished weight to the opinion of a non-treating physician in favor of the findings of Carr's treating physician. The ALJ also made appropriate citation to medical evidence of record and articulated a logical bridge between the evidence and her conclusions. The court finds her opinion to be supported by substantial evidence and will affirm the Commissioner's decision.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner denying the plaintiff's application for disability insurance benefits and supplemental security income be and the same is hereby **AFFIRMED**;

-11-

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The clerk of court is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge